## BRANDON V. BRANDON.

*Will—construction of—conflicting provisions—Infant's estate—when equity will subject to unauthorized payments for support of infant.*

A will contained this provision, " I will in trust to my wife all my property during her life-time; in consideration of which it shall be her duty to care, provide, and educate our children, until they are of age. After her death, all the real estate found is to be divided equally among my sons, and all my personal property found then shall be equally divided among my daughters. This is my last will, and it is my desire that the spirit as well as the letter thereof may be carried out." At the time of the testator's death the children were all under fourteen years of age. There was no executor appointed by the will, and letters of administration with the will annexed were granted to the widow and brother of testator. The widow, for two years, maintained the children as one family, when she died. The brother continued the mainte-nance of the children as one family, for two years, until the appointment of a general guardian, and expended in so doing his own money. *Held,* (1) that it was not the intention of the testator that the estate should be divided upon the death of his wife, but only upon that event after the children became of age; (2) that while the brother had no claim at law for reimburse-ment out of the testator's estate, he having done what, on application, the court would have directed him to do, equity could allow him to be so reim-bursed.

ACTION in equity to recover moneys paid by plaintiff's testator for the support and maintenance of defendants who are infants. The action was brought by Eleana E. Brandon, executrix, under the last will of Nicholas Brandon, deceased, against Abram W. Brandon and others, infants, who appeared by a guardian *ad litem,* and their general guardian. The material facts appear in the opinion. The action was tried at the Greene Circuit, February, 1874.

*James B. Olney* and *Rufus W. Watson,* for plaintiff.

*Rufus H. King,* for defendants.

WESTBROOK, J. Lucas E. Brandon departed this life in March, 1859, leaving his widow, Elizabeth, and several minor children, him surviving. He also left a last will and testament, which was duly admitted to probate by the surrogate of Greene county, in

April, 1859. The will named no person as the executor thereof, and the widow Elizabeth, and his brother Nicholas, both now deceased, were appointed the administratrix and administrator thereof, with the will annexed, by the surrogate.

The will, after providing for the payment of his debts and funeral expenses, declared: "I do hereby will in trust, to my wife, Elizabeth, all my property, both personal and real, whatsoever and whensoever during her life-time. In consideration of which it shall be her duty to care, provide, and educate our children *until they are of age.* After her death, all the real estate which may be found is to be divided equally among my sons; and all my personal property which shall be found then shall be equally divided among my daughters. This is my last will and testament, and it is my desire that the *spirit* as well as the *letter* thereof may be carried out."

With the aid and assistance of Nicholas, the widow endeavored to carry out the provisions of this will, the children being all maintained by her as one family, and out of the common estate. This continued for the space of about two years, when the widow also died, she departing this life in March, 1861. After her death, Nicholas, the uncle of the children, and the co-administrator with the will annexed of Lucas, took care of the family and property for about two years more, and until August, 1863, when the defendant, Burton G. Morss, was appointed the general guardian of the said infants, and to him Nicholas surrendered the estate. In the management of the estate and providing for the children, Nicholas expended out of his own means the sum of $219.69, which has not been repaid to him. There is no pretense or question but that this money was honestly, judiciously and properly expended for the benefit of the children and estate, and that this sum is honestly his due; but it is contended that he had no lawful authority to make the expenditure; that it was expended generally without reference to any one child; and that on the death of their mother, the female children took the personal estate, and the male the real; and the grant of the relief prayed for will take the share of one child and give it to another; and that the whole claim is barred by the statute of limitations.

The disposition of this case turns upon the construction of the will of Lucas E., the portions of which bearing upon the question to be considered have been given. Fortunately the instrument itself declares the manner of its interpretation, for the testator has

said: " It is my desire that the affairs of my estate shall be *managed prudently,* and that the *spirit* as well as the *letter* thereof may be carried out." Guided by this rule, may we not ask, how could the children be cared, provided for, and educated "until they are of age," if the estate was to be distributed among them immediately upon the death of their mother? The "letter" does provide for such a distribution, but it seems to me, that the "spirit" does not. When Lucas died the children (there were eight) were all minors, the oldest not fourteen, and the youngest less than one year old. Did he intend that the provision, which he had made for the support and education of these children until they attained their majority, should be abrogated and cease with the life of their mother? There was no guaranty for her life for an hour after his death, and yet he asks that his "estate shall be managed prudently, that the spirit as well as the letter " of the will may be carried out. The will plainly looks to the management of the estate as a whole prudently, that the object thereof may be accomplished. What was that object ? The devise was of the whole, real and personal, to the widow and mother, upon the *"consideration"* that she should "care, provide and educate our children until they are of age." This was the sacred and express trust created by the will — one near and dear to his heart — and to accomplish which he expresses the desire, that the "estate should be prudently managed."

When the will of Lucas E. was before this court for construction, though Elizabeth was still living, the possibility of her death before the completion of her trust must have been apparent, and yet, in view of such a possibility, the judgment of the court was that the whole estate of Lucas passed to his widow to be expended, if necessary, " for the maintenance and education of the said children *during their minority."* In this decision I most fully concur.

The object of the will then being to provide for the children during their minority from the whole estate, it follows that the real estate would be divided among the male children, and the personal among the female, only after such object had been accomplished, and not immediately upon the death of their mother. This the "spirit" of the will requires, if its exact "letter" does not, and the former, the testator has declared, shall be our guide as well as the latter. This view disposes of the objection, that a judgment in favor of the plaintiff may take from the share of one

child to pay the debt of another. Neither child had any share until all had been cared for and educated up to their arrival at full age. No other construction of the instrunent would carry out its object, or distribute the property equally. If the estate were divided among the several children immediately upon the death of their mother, it is manifest that the oldest child, who had, up to that date, been cared for and educated from the common fund, would, in what he then obtained and what he had prior to that time received, derive a larger benefit from his father's property, than the youngest. And what is true of the oldest and youngest is true, though the proportions may be less, of each and all the others.

Upon the death of the mother this court would have appointed another in her stead to discharge the trust created by the will. No application, however, for that purpose was made, and Nicholas, whose estate the present plaintiff represents, doubtless supposing that his duties as administrator with the will annexed so required, proceeded in good faith to do that which the father had previously committed to the mother. In short he did precisely that which the court would have authorized him to do had he, or any one in behalf of the children, applied to appoint him the trustee in lieu of his deceased sister-in-law. This brings us face to face with the question: Will a court of equity regard that as illegally done which was performed in good faith, and with an honest intention by an individual whom the court would have appointed for that very purpose? It is true that the exercise of such trusts by *de facto* and not *de jure* trustees are not to be encouraged, and great care should be taken to sanction no transaction not performed honestly and the party in good faith supposing that he was acting legally. Within these limitations I know of no principle of either law or equity which will prevent this court from doing exact justice to parties. In this case, the bills and vouchers presented, and all the facts showed an honest and real expenditure of money for the benefit of infants — an expenditure the integrity of which is not here questioned. Would it be just to afford the estate, which the plaintiff represents, no relief? We think not.

The action which is to be determined is one of a strictly equitable character. No suit at common law could ever have been entertained. A *de facto* trustee applies to a court of equity to give him relief against the estate of the *cestui que trusts* for money honestly expended. He concedes he has no remedy by ordinary common-

Brandon v. Brandon.

law action, but wishes the good conscience of a tribunal vested with the power of the old court of chancery to give him relief. Such an action, if barred at all by lapse of time (it being a transaction between trustees and *cestui que trusts*), would require ten years.

The result of my examination is that the plaintiff is entitled to judgment. The findings of fact will be prepared by the attorneys of the plaintiffs. When settled they will be entered as found by the jury, and the judgment of the court pronounced thereon. If parties prefer, there need be no verdict, but the findings of fact and conclusions of law may both be by the court.

*Ordered accordingly.*